_____



**SO ORDERED,**

**Judge Katharine M. Samson**
United States Bankruptcy Judge
Date Signed: March 17, 2022

The Order of the Court is set forth below. The docket reflects the date entered.
_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| IN RE:  RIVERBEND ENVIRONMENTAL SERVICES LLC | CASE NO. 19-03828-KMS |
| DEBTOR | CHAPTER 11 |
| GREENWAY ENVIRONMENTAL SERVICES LLC | PLAINTIFF |
| V. | ADV. PROC. NO. 20-00050-KMS |
| ORLANDO D. GREEN et al. | DEFENDANT |

### OPINION AND ORDER
### <u>GRANTING GREENWAY'S MOTION FOR PARTIAL SUMMARY JUDGMENT</u>

This matter is before the Court on cross-motions for partial summary judgment by Plaintiff Greenway Environmental Services LLC, ECF No. 60, and certain Defendants ("Family Defendants"), ECF No. 57. This proceeding is core under 28 U.S.C. § 157(b)(2)(O).

Debtor Riverbend Environmental Services LLC owned and operated a landfill in Jefferson County, Mississippi. Greenway now owns and operates the landfill, having bought substantially all Riverbend's assets in a sale under 11 U.S.C. § 363. The sale excluded approximately 110 acres of land co-owned by Riverbend and the Family Defendants ("Co-Owned Property"). Greenway wants to also buy the Co-Owned Property and toward that end filed the Amended Complaint, ECF No. 46, seeking relief under § 363 and a declaratory judgment concerning the enforceability of

certain provisions in two leases executed more than twenty-eight years ago (together, "Leases"; individually, "Dinelli Lease" and "Green Lease"). The respective lessors were one of the Family Defendants, Katie Ruth Denelli aka Katie Ruth Dinelli, and a now-deceased forebear, Marrion L. Green. The lessee was a corporation whose ownership interest in the Co-Owned Property preceded Riverbend's.

The cross-motions pertain only to the Amended Complaint's Count 5, which seeks a declaratory judgment on the provisions at issue ("Covenants") in both Leases.[1] *See* ECF No. 46 at 19-20. Greenway moved for summary judgment as to both Leases, arguing that the Covenants are unenforceable. The Family Defendants moved for summary judgment as to only the Green Lease, arguing that its Covenant is enforceable and consequently that the Family Defendants own not only their 1/3 undivided interest in the Co-Owned Property but also are entitled to Riverbend's 2/3 undivided interest.

As to both Leases, there is no dispute as to any material fact, and the Covenants are unenforceable against Riverbend as a matter of law. Consequently, summary judgment is granted to Greenway.[2]

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (made applicable by Fed. R. Bankr. P. 7056). "A fact is 'material' if its resolution in favor

---

[1] At a status conference attended by both parties' attorneys, the Court explicitly limited these summary judgment motions to the enforceability of the Covenants. Notwithstanding, the Family Defendants ask for alternative relief under § 363. *See* ECF No. 57 at 2. Such relief will not be considered at this juncture. *See Hudson v. Cleco Corp.*, 539 F. App'x 615, 617-18 (5th Cir. 2013) (stating that timing and sequence of summary judgment motions is within trial court's broad discretion to control its own docket).

[2] The Family Defendants filed counterclaims as to both Leases that raise the same legal questions considered in the cross-motions. *See* ECF Nos. 14 at 7-10, 43 at 7-9. All counts in the counterclaims remain pending.

of one party might affect the outcome of the lawsuit under governing law. An issue is 'genuine' if the evidence is sufficient for a reasonable [fact-finder] to return a verdict for the non-moving party." *Ginsberg 1985 Real Estate P'ship v. Cadle Co.*, 39 F.3d 528, 531 (5th Cir. 1994) (citations omitted). A party asserting that a fact either is genuinely disputed or cannot be genuinely disputed must support the assertion by citations "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

The moving party bears the initial responsibility of informing the court of the basis for its motion and the parts of the record that indicate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Once the moving party presents the . . . court with a properly supported summary judgment motion, the burden shifts to the nonmoving party to show that summary judgment is inappropriate." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). But the nonmovant must meet its burden with more than "metaphysical doubt," "conclusory allegations," "unsubstantiated assertions," or a mere "scintilla" of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

On cross-motions for summary judgment, each movant must establish the absence of a genuine issue of material fact and the movant's entitlement to judgment as a matter of law. *Shaw Constructors v. ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 538-39 (5th Cir. 2004). "If there is no genuine issue and one of the parties is entitled to prevail as a matter of law, the court may render summary judgment." *Id.* at 539. "[C]ross-motions may be probative of the non-existence of a

factual dispute when . . . they demonstrate a basic agreement concerning what legal theories and material facts are dispositive." *Petro Harvester Operating Co. v. Keith*, 954 F.3d 686, 700 (5th Cir. 2020) (quoting *Bricklayers Local 15 v. Stuart Plastering Co.*, 512 F.2d 1017, 1023 (5th Cir. 1975)).

## UNDISPUTED MATERIAL FACTS

Facts considered undisputed are the facts supported by the record documents relied on by both Greenway and the Family Defendants, facts that may be judicially noticed, and facts that Greenway supported with competent summary judgment evidence that the Family Defendants did not address.[3]

1. Riverbend filed the underlying chapter 11 case on October 25, 2019. *See* ECF No. 1, *In re Riverbend Envtl. Servs. LLC*, Ch. 11 Case No. 19-03828-KMS (Bankr. S.D. Miss.).

2. Riverbend assigned its rights against the Family Defendants to Greenway. ECF No. 60-2.

3. The Family Defendants own a 1/3 undivided interest in the Co-Owned Property; Riverbend owns a 2/3 undivided interest. ECF No. 58 at 3; ECF No. 60 at 4-5.

4. On November 16, 1993, Marrion L. Green leased his 1/3 undivided interest in the Co-Owned Property—the interest the Family Defendants now own—to Southern Landfill Management Inc. Green Lease, ECF No. 71 at 1.

---

[3] The Family Defendants did not address any of Greenway's factual assertions as to the Dinelli Lease, possibly because some of the documents Greenway submitted, although not competent summary judgment evidence, suggest Dinelli did not own an interest in the Co-Owned Property when the Dinelli Lease was executed. That the Family Defendants excluded the Dinelli Lease from their motion does not, however, mean this Court is "confined" to determining the Family Defendants' interest in the Co-Owned Property based only on the Green Lease, as Greenway asserts. *See* ECF Nos. 67 at 2, 68 at 2 n.3. The Family Defendants did not have a movant's burden as to the Dinelli Lease. That they failed to address Greenway's assertions of fact about the Dinelli Lease means "the court may . . . consider the fact[s] undisputed for purposes of the motion [or] grant summary judgment if the motion and supporting materials . . . show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2), (3).

4

5. The Green Lease included this provision: "After the last payment, all obligations under this lease shall terminate except for the duty of [Southern Landfill] to provide closure and post closure care as provided by law . . . ." *Id.* at 6.

6. The Green Lease expired after fifteen years but could be renewed by Southern Landfill for up to ten years on payment of $5000. *Id.* at 1, 3.

7. The same day Green executed the Green Lease, he also by power of attorney executed the Dinelli Lease between his sister, Katie Ruth Denelli aka Katie Ruth Dinelli, as lessor and Southern Landfill as lessee. Dinelli Lease, ECF No. 60-4. The Dinelli Lease purported to lease Southern Landfill a 45.80-acre tract as shown on an exhibit to the Dinelli Lease that the record does not include.[4] *Id.* at 2.

8. As did the Green Lease, the Dinelli Lease included this provision: "After the last payment, all obligations under this lease shall terminate except for the duty of [Southern Landfill] to provide closure and postclosure care as provided by law . . . ." *Id.* at 6.

9. As did the Green Lease, the Dinelli Lease expired after fifteen years but included an option for Southern Landfill to renew for up to an additional ten years upon payment of $5000. *Id.* at 3.

10. Both Leases were filed in the county land records. ECF No. 60-4 at 13; ECF No. 71 at 16.

11. On May 7, 2009, Southern Landfill filed a chapter 11 bankruptcy case. *See* ECF No. 1, *In re S. Landfill Mgmt. Inc.*, Ch. 11 Case No. 09-01620-EE (Bankr. S.D. Miss.) (dismissed Oct. 30, 2009).

12. Less than a month later, Green died. ECF No. 60 at 6.

13. The Family Defendants are individuals adjudged to be Green's heirs. *See* ECF No. 60-8 at 3.

---

[4] The record is vague about the relation between the discrete tract designated in the Dinelli Lease and the undivided interests in the Co-Owned Property.

5

14. On July 10, 2009, Southern Landfill's interest in the Co-Owned Property was transferred to Jefferson Landfill LLC nka Riverbend by a substituted trustee's deed after a foreclosure sale. Sub'd Tr.'s Deed, ECF No. 60-11.

15. Southern Landfill made no payments under the Green Lease, whether for the initial term or the renewal. Cl. 15-1 Pt. 3, Southern Landfill Ch. 11 Case No. 09-01620-EE (proof of claim by Green's estate with amended complaint against Southern Landfill, which Green's estate had planned to file—but did not—in Green's lawsuit against Southern Landfill in the Circuit Court of Jefferson County, Mississippi, *Green v. S. Landfill Mgt. Inc.*, No. 98-0055).

16. Until 2020 when the Family Defendants filed a counterclaim in this adversary proceeding, neither they nor Green's estate nor Dinelli had pursued any legal action to enforce the Leases or the Covenants since 2009. ECF No. 60-9 at 4 (docket sheet for *Green v. S. Landfill Mgt. Inc.*, showing last filing on August 31, 2009); Riverbend Cls. Reg., Ch. 11 Case No. 19-03828-KMS (showing no proof of claim by Dinelli, Green's estate, or Family Defendants).

## CONCLUSIONS OF LAW

The Family Defendants assert that a provision in the Green Lease ("Green Covenant") requires Riverbend to convey to them its 2/3 interest in the Co-Owned Property. The Green Covenant provides:

> After the landfill is closed or no later than 25 years, [Southern Landfill] will deed to [Green] any property from the purchased undivided interest [that is, Southern Landfill's 2/3 interest] that is not part of the actual landfill.
>
> After closure, post closure, and monitoring periods are over, and the property is released by the MDEQ and/or the EPA, then [Southern Landfill] or its successors shall deed the remainder of the undivided portion to [Green], his heirs or assigns.

ECF No. 71 at 9. The Dinelli Lease includes a similar but more broadly worded provision ("Dinelli Covenant"): "[A]t the end of closure, postclosure, and monitoring and at such time that [Southern

6

Landfill] is released from any liability by the Mississippi Department of Environmental Quality it will cause the property owned by [Southern Landfill] to be deeded to [Dinelli]." ECF No. 60-4 at 9. The question on summary judgment is whether either or both Covenants are enforceable against Riverbend. The answer depends in part on whether the Covenants are real or personal.

"In Mississippi, all covenants having to do with realty or the use of realty are either real or personal." *Diamondhead Country Club & Prop. Owners Ass'n v. Peoples Bank*, 296 So. 3d 651, 655 (Miss. 2020) (citing *Vulcan Materials Co. v. Miller*, 691 So. 2d 908, 913-14 (Miss. 1997)). "A real covenant binds the heirs and assigns of the original covenantor, while a personal covenant does not, except in certain circumstances . . . . Put another way, a covenant may 'run with the land,' or may simply be a matter between the [original contracting parties]." *Vulcan*, 691 So. 2d at 914 (quoting 20 Am Jur. 2d *Covenants, Conditions, and Restrictions* § 12 (1995)).

> For a covenant to be real rather than personal, it must be shown that (1) the covenanting parties intended to create such a covenant; (2) privity of estate exists between the person claiming the right to enforce the covenant and the person upon whom the burden of the covenant is to be imposed; and (3) the covenant "touches and concerns" the land in question.

*Id.* (quoting 20 Am Jur. 2d *Covenants, Conditions, and Restrictions* § 13).

The Family Defendants cannot show that the Covenant in either Lease meets these requirements. Consequently, the Covenants are personal. And circumstances are not such that Riverbend is bound by them.

### I. Green and Southern Landfill Did Not Intend to Create Real Covenants.

"Rules governing the construction of covenants imposing restrictions and burdens on the use of land are the same as those applicable to any contract or covenant." *Mendrop v. Harrell*, 103 So. 2d 418, 422 (Miss. 1958). "[T]he question is primarily one of intention, and the fundamental rule is that the intention of the parties as shown by the agreement governs . . . ." *Belager-Price v.*

7

*Lingle*, 28 So. 3d 706, 714 (Miss. Ct. App. 2010) (quoting *A.A. Home Improvement Co. v. Hide-A-Way Lake Club, Inc.*, 393 So. 2d 1333, 1336 (Miss. 1981)).

The court first considers whether the agreement is ambiguous, determined by "review[ing] the express wording of the contract as a whole." *Sledge v. Grenfell Sledge & Stevens, PLLC*, 263 So. 3d 655, 664 (Miss. 2018) (quoting *Epperson v. SOUTHBank*, 93 So. 3d 10, 16 (Miss. 2012)); *City of Grenada v. Whitten Aviation, Inc.*, 755 So. 2d 1208, 1215 (Miss. Ct. App. 1999) (citing *Lampkin v. Heard*, 102 So. 565 (Miss. 1925)) ("In construing particular provisions of a contract, the instrument as a whole will be looked to, and its meaning determined from the entire agreement as written."). "[T]he instrument should be construed in a manner which makes sense to an intelligent layman familiar only with the basics of the English language." *Belager-Price*, 28 So. 3d at 711 (citing *Pursue Energy Corp. v. Perkins*, 558 So. 2d 349, 352 (Miss. 1990)). "When a written instrument is clear, definite, explicit, harmonious in all its provisions, and is free from ambiguity, a court in construing it will look solely to the language used in the instrument itself. In such a case a court will give effect to all parts of the instrument as written." *Buchman v. BASF Corp.*, 107 F. App'x 378, 381 (5th Cir. 2004) (quoting *Pfisterer v. Noble*, 320 So. 2d 383, 384 (Miss. 1975)). Only if the agreement is ambiguous does the court apply the discretionary canons of contract construction . *Herrmann v. Herrmann*, 193 So. 3d 670, 673 (Miss. Ct. App. 2016).

The Green Lease and the Dinelli Lease, each read as a whole, unambiguously do not manifest any intention by the parties for the Covenants to run with the land. Under both Leases, the only obligation that extends beyond the lease term is the duty "to provide closure and post closure care as provided by law." *See* ECF Nos. 71 at 6; 60-4 at 6.

Notwithstanding, the Family Defendants argue that the Green Lease is ambiguous, providing on the one hand that all obligations under the Lease terminate after the final payment

and imposing on the other hand an obligation that they argue extends beyond the lease term: to deed Southern Landfill's interest in the part of the Co-Owned Property "that is not part of the actual landfill" to Green in "no later than 25 years," ECF No. 71 at 9. *See* Opp'n Br., ECF No. 66 at 3 ("The provisions are contradictory as either the Lessee has no obligation to the Lessor or Lessee has an ongoing obligation . . . ."). The Family Defendants are mistaken.

Read sensibly, the Green Covenant does not impose an obligation that extends beyond the lease term. As to property that is not part of the actual landfill, restricting the obligation to "no later than 25 years" confines it within the maximum period provided for in the Lease: the 15-year initial term followed by an optional term of up to 10 years. The event that triggers the obligation to deed the non-landfill property to Green is the termination or expiration of the Lease, which would occur necessarily at some point over the 25 years and would either require or be prompted by the closure of the landfill.[5] As to property that *is* part of the actual landfill, the triggering event is also the termination or expiration of the Lease, but performance of the obligation would be postponed until after Southern Landfill or its successors fulfilled environmental obligations as determined by government regulatory agencies. The same analysis applies to the Dinelli Covenant. Again, read sensibly, the termination or expiration of the Lease triggers the obligation, with performance postponed until the regulatory agencies release the property.

## II. No Privity of Estate Exists Between Southern Landfill and Riverbend.

Privity of estate may be either horizontal or vertical. "'[H]orizontal privity' requires privity of estate between the covenantor and the convenantee at the time the covenant was created while 'vertical privity' requires privity of estate between the covenanting parties and their successors in

---

[5] Southern Landfill had the right to terminate the Green Lease if the landfill ceased operations because it became filled and therefore unusable; lost its government approval to operate; or became economically unfeasible to operate. ECF No. 71 at 5.

interest." 3 *Tiffany Real Property* § 851 (3d ed.), Westlaw (database updated Sept. 2021). There is no question that horizontal privity existed between Green and Southern Landfill. *See Excel Willowbrook, L.L.C. v. JP Morgan Chase Bank, N.A.*, 758 F.3d 592, 600 n.20 (5th Cir. 2014) ("Horizontal privity refers to the relationship between the original covenanting parties . . . and requires the covenant to be created in conjunction with a conveyance of an estate in land (*e.g.*, a leasehold).") The question is whether vertical privity exists between Southern Landfill and Riverbend. *See Clement v. R.L. Burns Corp.*, 373 So. 2d 790, 794 (Miss. 1979) (quoting *Stone v. Grenada Grocery Co.*, 178 So. 107, 108 (Miss. 1938)) ("Privity implies succession. He who is in privity stands in the shoes or sits in the seat of the owner from whom he derives his title, and thus takes it charged with the burden attending it.").

No privity of estate exists between Southern Landfill and Riverbend, because nine months before Jefferson Landfill nka Riverbend acquired its interest in the Co-Owned Property, the Leases expired by their own terms. *See Excel Willowbrook*, 758 F.3d at 601 ("[P]rivity of estate terminates upon expiration of the lease term . . . ."); 1 *Tiffany Real Property* § 147 ("An estate for years comes to an end at the expiration of the term for which it was created, and this without any notice from the landlord to the tenant or from the tenant to the landlord . . . ."). Further, it is undisputed that Southern Landfill did not pay the $5000 required to renew the Green Lease, and there is no evidence that Southern Landfill paid the $5000 required to renew the Dinelli Lease. *See Buchman*, 107 F. App'x at 382 (holding that term contract with option to renew was self-terminating when nothing indicated that lessees sought to renew).

### III. The Covenants Do Not Touch and Concern the Land.

To touch and concern the land, a covenant "must be so related to the land as to enhance its value and confer a benefit upon it, or, conversely, impose a burden on it." *Id.* at 383 (quoting

10

*Vulcan*, 691 So. 2d at 914). As examples, Mississippi courts and federal courts applying Mississippi law have held that the following covenants touch and concern the land: a covenant burdening the land with an obligation to pay expenses incidental to street paving, held to enhance the land's value and to benefit it and the other lots in the subdivision, *Mendrop*, 103 So. 2d at 423; a covenant prohibiting the erecting of any "structures" on three acres of unimproved land, held to impose a burden on the use and enjoyment of the land, *Misita v. Conn*, 138 So. 3d 138, 140, 142 (Miss. 2014); and a covenant prohibiting operation of a sawmill on the property for a period of thirty years, held to decrease the value of the land and to operate as a noncompetitive covenant, *Barton v. Fred Netterville Lumber Co.*, 317 F. Supp. 2d 700, 702, 707 (S.D. Miss. 2004). The touch and concern requirement is not met when the burden imposed on the land is for the personal benefit of the grantor. *Vulcan*, 691 So. 2d at 914. For example, agreements to pay mining royalties created only a personal benefit. *Id.*; *Buchman*, 107 F. App'x at 384;.

The Family Defendants strain to apply the benefit-burden analysis to the Green Covenant. Their best argument is that the whole tract would be worth more than the sum of the values of the undivided interests. *See* ECF No. 69 at 2. But this argument misses the mark. The Green Covenant and the Dinelli Covenant do not impose a burden on Riverbend's interest for the benefit of the Family Defendants' interest; they extinguish Riverbend's interest to vest the Family Defendants with 100% ownership of the Co-Owned Property. This benefit is purely personal.

### IV. The Covenants Do Not Bind Riverbend.

"[O]ne generally has to specifically assume and ratify a personal covenant in order to be bound by it." *Vulcan*, 691 So. 2d at 912 (quoting *Coggins v. Joseph*, 504 So. 2d 211, 214 (Miss. 1987)). Riverbend did not assume the Covenants, because it did not assume the Leases, both of

11

which expired before Riverbend acquired its interest in the Co-Owned Property. Consequently, under *Vulcan*, the Covenants do not bind Riverbend.

Nevertheless, the Family Defendants cite *Vulcan* to argue that even if the Green Covenant is personal, Riverbend is bound by it because the Green Lease was filed in the county land records, thereby putting Riverbend on notice of the Covenant. *See* ECF No. 58 at 4. But *Vulcan* does not support this argument. Vulcan was bound by a personal covenant because Vulcan accepted a deed expressly providing that it assumed the obligation. 691 So. 2d at 915; *see also Buchman*, 107 F. App'x at 384 ("Because the agreement to pay royalties in this case, like that in *Vulcan Materials Co.*, creates only a benefit personal to Semmes/Pollard, *Appellees would have had to assume the obligation* for it to apply in this case.") (emphasis added).

## CONCLUSION

The Covenants are not real covenants that run with the land. They are personal covenants, and Riverbend did not assume them. Consequently, neither Covenant is enforceable against Riverbend.

## ORDER

**IT IS THEREFORE ORDERED** that Greenway's motion for partial summary judgment is **GRANTED** and

**FURTHER ORDERED** that the Family Defendants' motion for partial summary judgment is **DENIED**.

*##END##*